THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY v. GEORGE W. BROE.

(Filed September 6, 1905.)

1. COMMON CARRIER—Damages—Measure of. Where a common carrier fails to deliver merchandise shipped over its line of road, within a reasonable time, and there is no depreciation in the intinsic value of such merchandise, the measure of damages will be deemed to be the depreciation in the market value of such merchandise between the date on which the delivery should have been made and the date on which it actually was made.

2. SAME—"Market Value" Defined. By market value as used in the preceding paragraph (and as used in sec. 2746 of Wilson's Annotated Statute) is meant the value at which the article shipped would sell for in the open market in the quantities as carried, and where the articles shipped are merchandise and shipped in large quantities it is error to measure the damages sustained (if any) by the market value of such merchandise when sold at retail.

3.   SAME—Measure of Damages.  Where a railroad company fails and neglects to deliver a car-load of freight within a reasonable time (taking into consideration all of the conditions surrounding the shipment), and such delay is due to the negligence of the company in the absence of any evidence to the effect that the consignee has suffered actual damages, he can recover nominal damages only.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before Frank E. Gillette, Trial Judge.*

*M. A. Low* and *Blake, Blake & Low,* and *W. C. Stevens,* for plaintiff in error.

*James A. Morris,* for defendant in error.

Opinion of the court by

BURWELL, J.:   The appellee, George W. Broe, purchased a car-load of wire and nails in St. Louis, and had them shipped to Lawton over the appellant's road.  On October 3rd, 1901, the local agent notified Mr. Broe that the car had arrived, and he called the next day and paid the freight charges, and personally saw the car on the track.  On October 5th men and teams were sent to unload the car, but it could not be found, and on the next day, October 6th, Mr. Broe called on the agent and informed him that the car was not in the yards. The car was finally found at Fort Sill, the next station, some three weeks afterwards, and the wire and nails replevined by him.  The plaintiff prayed damages for the detention of the same.  It is contended by the railroad company that it was excused from delivering the car sooner because of the overcrowded condition of the freight business at that time, at Lawton, and that the company was compelled to run cars up the road almost daily and store them on other side tracks, as there was not sufficient trackage facilities at Lawton, and

that it used reasonable diligence in delivering the car, in the light of all of the surrounding circumstances. There was sufficient evidence to justify the jury in finding that the company was guilty of negligence. Even after the depot agent was notified by the consignee that the car was at Fort Sill, no effort was made by the company to return it to Lawton. It was returned in charge of the sheriff of the county, by his directions, after he had seized the property under the writ of replevin. But negligence in failing to deliver goods to a consignee within a reasonable time will not subject the carrier thereof to the payment of more than nominal damages, unless actual damages are proven by a preponderance of the evidence. We will therefore examine the evidence on this point. The plaintiff is the only witness who testified as to the measure of damages. We quote him from the testimony:

"Q. You may state if you know the market value of the wire here, such wire as is in controversy here, at the time you commenced this action?

"A. Yes sir.

"Q. What was its value at that time?

"A. At the time I commenced?

"Q. At the time you commenced this action on the 28th of October, 1901?

"A. It was worth $4.00 a hundred.

"Q. You may state if you know what the nails were worth here at that time?

"A. The nails were worth $4.00 a hundred, a little fraction less, and a little fraction more, according to the size of the nails.

"Q. Now you may state what the value of this wire, the market value here at Lawton was on the 5th day of October 1901, if you know?

"A. From the first day of October until the 10th day of October we retailed wire at four cents a pound, black wire.

"Q.   Such wire as this?

"A.   Same identical wire, yes sir.

"Q.   Now what was the same kind of wire worth on the 28th of October, when you commenced this action?

"A.   Three and one half cents.

"Q.   Now, in regard to the nails, what were such nails as those in there (meaning in the car) worth at their market value on the 5th day of October, 1901?

"A.   We were retailing nails then at four and four and one half cents a pound.

"Q.   What were they worth on the 28th day of October when you commenced this action?

"A.   Three and three and one half cents."

The foregoing is all of the evidence as to damage or loss of trade except the same witness stated in the course of his testimony that he needed the goods during the time of the delay.   The bill of lading shows that there were, in the car, 954 pounds of nails, and 30,045 pounds of wire.   According to the evidence, the nails could not have been depreciated more than one half a cent per pound from October 4th to October 28th, which would be a loss of four dollars and seventy seven cents to the consignee.   As to the wire, Broe states, in one place in his testimony, that, at the commencement of the action, the wire was worth four cents a pound, which is the same price that he said it was worth on October 4th, 1901; but, subsequently, he testified that it was worth only three and one-half cents when the action was begun.   No explanation is offered as to this contradiction in his testimony and as he is the party in interest, his testimony should be interpreted most strongly against him.   If this is done, then he suffered no injury, for the wire was as valuable when he received it as it was on October the fourth.   If the jury believed his last statement, then the difference in the value of the wire

would be $150.22 1|2 plus the loss of $4.77 on the nails, which would make his total loss $154.99 1|2 which would be more than the verdict. Perhaps we should here notice the rule by which the appellee arrives at his loss. He states in his testimony that these were the prices at which they sold goods of this kind and quality at retail. There was no evidence as to market value when disposed of in any other way. The defendant company moved the court to instruct the jury to return a verdict for nominal damages only. This request was overruled, and exceptions saved. Section 2746 of Wilson's Annotated Statutes, fixes the measure of damages in a case of this kind. It provides:

"The detriment caused by a carrier's delay in the delivery of freight, is deemed to be the depreciation in the intrinsic value of the freight during the delay, and also the depreciation, if any, in the market value thereof, otherwise than by reason of a depreciation in its intrinsic value, at the place where it ought to have been delivered, and between the day at which it ought to have been delivered, and the day of its actual delivery."

In the case under consideration there was no depreciation in the intrinsic value of the property; therefore, the plaintiff could only recover for the depreciation in the market value. The evidence on this point did not conform to the rule for determining such value. The market value, as applied to the case at bar, in contemplation of law, would have been what the different articles of merchandise would have sold for in bulk in the open market at Lawton on the different dates. The law does not contemplate that the carrier shall be liable for the value of merchandise if sold at retail. Such a rule would make the carrier liable, not for the market value of goods as sold in car-load lots or in quantities as carried by

it, but would also add to and include the profits of the sales at retail, without taking into consideration the costs incident to such sales. There was no evidence before the jury by which it could determine the difference in the value of the articles in question when sold in bulk and when at retail. The case was tried upon the theory that the retail market should control. The court gave the jury no instructions as to this matter, and, in the light of the entire record, we must conclude that the jury understood that, by market value was meant the value which such articles sold for in the retail trade. The damages were estimated by an improper standard.

The jury returned a general verdict for $150.00 They also answered three special interrogatories which, together with the answers we give in full:

"Question No. 1: Do you find from the evidence that the defendant did not, within a reasonable time deliver the goods described in the petition, to plaintiff?

"Answer: Yes

"Question No. 2: If your answer to the last preceding question is 'Yes' please state what you find to have been a reasonable time for delivery?

"Answer: Four days.

"Question No. 3: If you find for the plaintiff, state by what you measure the amount of his damages?

"Answer: Depreciation in value of goods and loss in trade."

The jury had absolutely no justification for allowing the consignee anything for loss of trade. There was no evidence on which to base such a finding, and even if there had been it could not be considered, as the carrier's liability is fixed by the section of the statute above quoted, and loss of trade is not referred to therein. From the record, we cannot deter-

mine the amount awarded for loss of trade. It cannot be separated from the award for depreciation of the market value of the property. The motion of the railroad company to direct the jury to return a verdict for nominal damages only should have been sustained. The evidence did not justify any greater verdict for the plaintiff, and so far as the record shows, there may have been no difference in the market value of the property if sold in bulk on October 4th and on October 28th. The wire and nails were actually delivered to the plaintiff at the commencement of the suit; hence, we have confined this opinion to the other issues of the case.

For the reasons herein given, the judgment of the lower court is hereby reversed at the cost of appellee, and a new trial granted, with directions to proceed in conformity with the views herein expressed.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.