HENRY SAUTER V. THE ATCHISON, TOPEKA & SANTA FE
RAILWAY COMPANY.

No. 15,589.   (97 Pac. 434.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Transportation of Goods within a Specified Time
—Evidence.* A mere statement of the station agent of a rail-
road company, to one about to deliver goods to the company
for shipment over its railroad, that the goods should arrive
at the proposed destination at a certain time does not con-
stitute a contract to carry them within such time.

2. RAILROADS — *Injury to Goods in Transit* — *Act of God.* An
agreement by a railroad company with a shipper to transport
his goods from one station to another on its railroad within
a certain time does not make the carrier an absolute insurer
of the goods. Their destruction within the prescribed time by
an act of God will excuse non-delivery thereof.

Error from Sedgwick district court; THOMAS C.
WILSON, judge. Opinion filed June 6, 1908. Affirmed.

STATEMENT.

THE plaintiff in error brought this action in the dis-
trict court of Sedgwick county to recover damages for
the loss of a horse and household and other goods,
which were shipped on the 28th day of May, 1903, over
the defendant's line of railroad at Galesburg, Ill., to be
delivered at Wichita, Kan., on the same line. Accord-
ing to the undisputed evidence in the case the car ar-
rived at Argentine, Kan., which is adjacent to Kansas
City, Mo., on the 30th day of May, 1903, during what
is known as "the great flood." The last train over de-
fendant's road west from Argentine, prior to about
June 7, 1903, departed about eleven o'clock A. M. May
29, 1903. The car was moved to a high point in the
yards, where it remained during the flood, and was
submerged in water about eleven or twelve feet. A
horse, which was shipped in the car, died, and the
household goods were ruined.

On the trial of the case it was agreed that the plain-

tiff was entitled to recover $1200 and costs, if he was entitled to recover anything. A jury was impaneled to try the case, and after the evidence was introduced the court, on the motion of the defendant, instructed the jury to return a verdict for the defendant, which was done, and judgment was rendered against the plaintiff for costs.

*M. C. Freerks,* and *George W. Freerks,* for plaintiff in error.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: It is conceded by the plaintiff that if, as appears to be the case, the loss occurred through "an act of God" the defendant would not be responsible in damages therefor under the ordinary contract of freight shipment. He alleges in his petition, and relies upon, an oral contract between himself and the station agent of the defendant at Galesburg, Ill., by the terms of which "said car, so to be loaded and so to be transported, was to go right through, without stops, and . . . should reach Wichita, Kan., not later than the morning of the 31st day of May, 1903." In consideration of the contract the plaintiff agreed to pay, and did thereafter pay, the defendant the sum of sixty dollars for the service. The only evidence in support of the alleged special contract is the statement of the plaintiff, as a witness. His undisputed testimony is as follows:

"I went to see the C. B. & Q. agent, and on the 28th day of May, 1903, I returned to Mr. Machen, the agent for the Santa Fe. I asked him the same as I did before, and I asked him whether they would ship the goods right through, and when it would arrive at Wichita. He said it should arrive at Wichita the following Sunday, May 31, 1903. I told him what I wanted to put in the car—that I wanted to put a

horse in—and also asked whether a man could go in the car to take care of the horse. He said they would give free transportation with the car for $60. Pur-.suant to this talk I took the car and loaded the stuff in it."

The plaintiff also testified that after the goods and the horse were loaded in the car he signed a contract of shipment and a bill of lading.

The usual rule is that where parties orally negotiate and agree upon the terms of a contract, and thereafter reduce their contract to writing, the writing supersedes the spoken words and is presumed to include all of the contract—the oral agreement merges into the written one. . Whether this rule should apply under the circumstances of this case it is not necessary here to decide, as we do not think the evidence is sufficient to sustain the allegations of the petition in regard to the making of the oral contract.

Strict as are the rules of the common law in imposing upon the carrier liability for goods lost in transportation, "an act of God" is thereunder a justification for failure to perform the contract of carriage and relieves the carrier from liability for a loss of the goods consigned. (*Rodgers v. Railway Co.*, 75 Kan. 222, 88 Pac. 885, 10 L. R. A., n. s., 658; 6 Cyc. 377.) It is said in volume 1 of the American and English Encyclopædia of Law, at page 592:

"A common carrier, liable as an insurer for the property entrusted to him for the purpose of transportation, is, nevertheless, excused from responsibility for losses which are caused by an act of God."

If a contract may be made for the delivery of goods so strong as to render this excuse unavailable to the carrier for loss of the goods in transportation it must be expressed in language clearly and unequivocally disclosing such intent. The unusual character of such an agreement would call to its aid no presumption from the usual course of business. Such a contract is not deducible from the conversation related by plaintiff as

occurring between himself and the station agent at Galesburg on May 28, 1903. The answer of the agent as to when the goods would arrive at Wichita is more suggestive of an intention to inform the plaintiff of the time when the train would be due there, by the time-table, than of an intention to warrant its arrival by the time indicated. If, however, it be construed as a contract to deliver the goods within the time specified, which is all that is claimed in the petition, responsibility for failure to perform the contract is excused if prevented by the act of God. (*Strohn and another v. The Detroit and Milwaukee R. R. Co.,* 23 Wis. 126, 99 Am. Dec. 114.) That case is very similar to this, and, after holding that the statement of a station agent to the shipper as to the time a shipment should arrive at its destination does not constitute a contract that the transportation will be consummated within that time, the court said:

"We do not understand, however, that when a railroad company by its agent agrees to deliver goods within a prescribed time it becomes an absolute insurer of the goods, and must deliver at all events or pay for the property. We suppose if the goods were destroyed by an act of God or the public enemy before the time for delivering them expired, this would excuse the carrier on the special contract. The parties are presumed to contract with reference to the responsibility which the common law imposes upon the carrier in ordinary cases, the carrier assuming the risk in respect to the time. Such, it seems to us, is the extent of liability assumed by the special agreement." (Page 131.)

We conclude that the conversation testified to as evidence of a parol contract to transport the goods to their destination within a prescribed time is not sufficient clearly to indicate such an agreement; also, that if such a contract were established the carrier would not thereby become the absolute insurer of the goods and be bound to pay the value thereof if they should be destroyed and the delivery prevented by the act of God.

before the expiration of the agreed time of delivery. The evidence indicates that the flood, the act of God, was the sole cause of the loss of the goods and the horse. The judgment is affirmed.