## ST. L. & S. F. R. CO. v. CLOSE.

No. 3251.   Opinion Filed May 12, 1914.

(140 Pac. 1176.)

1.   **CARRIERS—Connecting Carriers—Liability—Termination.** If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier, carrying to the place of address, or connected with those who thus carry, and his liability ceases upon making such delivery.

2.   **SAME—Delay—Excessive Freight Charge.** "Every railroad, car, or express company, shall each respectively receive and transport without delay or discrimination each other's cars, loaded or empty, tonnage, and passengers, under such rules and regulations as may be prescribed by law or any commission created by this Constitution or by act of the Legislature for that purpose." Section 3, art. 9, Const. Okla. And such connecting carrier cannot avoid liability for delay in forwarding a shipment because of an alleged excessive freight charge, because it is not bound to collect more than legal charges, and can adjust the same after collection.

3.   **SAME—Delivery—Delay.** An initial carrier, which receives freight to be shipped beyond its lines under a bill of lading which expressly provides "that agents must not in any case receipt beyond points on this road," where such freight is promptly and without delay delivered to a connecting carrier, cannot be held liable under our statutes for delay caused by the connecting carrier.

(Syllabus by Harrison, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by W. D. Close against the St. Louis & San Francisco Railroad Company for damages for delay in shipment of

freight. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*Benj. F. Rice* and *Thos. D. Lyons,* for defendant in error.

Opinion by HARRISON, C. W. D. Close brought this action in the district court of Tulsa county in August, 1908, for damages resulting from a delay in the shipment of a merry-go-round from Ardmore to Pawhuska. The cause was tried in March, 1911, and judgment rendered upon a verdict in favor of plaintiff in the sum of $500. From such judgment the railroad company appeals upon eleven assignments of error.

There is one decisive proposition of law involved which renders the other assignments immaterial to a proper determination of this case, to wit, whether, under the circumstances of this case, the initial carrier, which was the defendant below, should be held liable for a delay in shipment occurring on a connecting, and in this case the terminal, carrier. The record discloses that the machinery necessary to the operation of the merry-go-round in question, and all the accoutrements, were delivered to the Frisco on May 19th; that the Frisco promptly and without delay transported such shipment to Tulsa on the 20th of May, the day following, and then and there tendered it to the Midland Valley Railroad Company for shipment from there to Pawhuska; that the Midland Valley Railroad failed to deliver such shipment to Pawhuska, and did not deliver it until June 1st, during which time plaintiff alleged that, owing to certain entertainments in the town of Pawhuska which brought a great many people to town, plaintiff was damaged by being deprived of the operation of the merry-go-round in the sum of $800. The question, then, is whether the initial carrier, who it is not denied delivered the goods promptly to the connecting carrier, should be held liable for damages resulting from the delay in the shipment by the connecting carrier.

Section 3, art. 9, of the Constitution (section 219, Williams' Ann. Ed.) provides:

"Every railroad, car, or express company, shall each respectively receive and transport without delay or discrimination each other's cars, loaded or empty, tonnage, and passengers, under such rules and regulations as may be prescribed by law or any commission created by this Constitution or by act of the Legislature, for that purpose."

Section 514, Comp. Laws 1909 (Rev. Laws 1910, sec. 845), provides:

"If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier, carrying to the place of address, or connected with those who thus carry, and his liability ceases upon making such delivery."

This section of the statute was construed in the case of *St. L. & F. R. Co. v. McGivney*, 19 Okla. 361, 91 Pac. 693, wherein it was held:

"If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier, carrying to the place of address, or connected with those who thus carry, and his liability ceases upon his making such delivery."

The plaintiff alleged that he delivered the shipment in question to the Frisco on May 19th for shipment to Pawhuska over it and its connecting lines, and that the Frisco accepted such shipment and agreed to transport the same under the terms of a certain bill of lading, one of the provisions of which is as follows: "Agents must not in any case receipt beyond points on this road."

It is clear from our constitutional and statutory provisions that it is the duty of the connecting carrier to accept shipments of freight under such circumstances, unless a valid reason for refusal exists, and that the liability of the initial carrier ceases when such delivery is made. There is no denial that the Frisco delivered the shipment promptly and tendered same to the Midland Valley, and that all the delay in further transportation was chargeable to the Midland Valley. True, it appears from the record that the Midland Valley declined to receive the shipment because of a pretended overcharge in freight, claiming that

the shipment should be reweighed, but it does not appear that the Midland Valley had any valid reasons for assuming that a reweighing was necessary, nor that, as a fact, there had been an overcharge of freight. Hence there was no excuse, so far as the record discloses, for the Midland Valley's declining to receive the shipment. But, admitting for argument's sake that such was the case, still it has been held:

"A carrier receiving goods in the usual way from a connecting carrier on which charges are to be collected at their destination cannot avoid liability for delay in forwarding the same because of excessive freight charges, since it is not bound to collect more than legal charges, and can adjust the same after collection." (*T. & P. Ry. Co. v. Hassell*, 23 Tex. Civ. App. 681, 58 S. W. 54.)

Also, *Inman v. St. L. & S. W. R. Co.*, 14 Tex. Civ. App. 39, 37 S. W. 38; *H. & T. C. R. Co. v. Lone Star Salt Co.*, 19 Tex. Civ. App. 676, 48 S. W. 619; *Gulf, etc., R. Co. v. Lone Star Salt Co.*, 26 Tex. Civ. App. 531, 63 S. W. 1025.

It follows, therefore, that the initial carrier was under no further obligation than to promptly deliver the shipment to a connecting carrier, and that it is the duty of such connecting carrier to forward same without undue delay.

It is apparent, under the record and the foregoing provisions of our Constitution and statutes and the authorities above, that whatever damages the plaintiff may have shown himself entitled to recover, the Frisco was not liable therefor. It had discharged every obligation which the law imposed upon it under the circumstances.

It is not necessary to pass upon the amount of damages recoverable or the measure of damages applicable to the issues under the circumstances, but we are forced to hold, under the record before us, that the St. L. & S. F. R. Company was not liable. The judgment is therefore reversed, and the cause remanded.

By the Court: It is so ordered.