## MISSOURI, K. & T. RY. CO. *et al.* v. FOOTE,

No. 4456. Opinion Filed May 25, 1915.

(149 Pac. 223.)

1. **CARRIERS—Damage to Shipment—Connecting Carriers—Demand for Proof.** If intrastate freight, addressed to a place beyond the usual route of a common carrier who first received it, is lost or injured, or if the shipper is damaged by the unnecessary and unreasonable delay in said shipment, it must, within a reasonable time after demand, give satisfactory proof to the consignor that the loss, injury, or damage did not occur while it was in its charge, or because of unnecessary and unreasonable delay caused by it, or it will be liable therefor. The demand for such proof must be direct and specific, and a simple request or demand for payment of the loss or damage does not bring the shipper within the requirements of the statute, which provides for a demand for proof that the damage or injury was not caused by the initial carrier.

2. **CARRIERS—Initial Carrier—Termination of Responsibility—Damage to Shipment.** The only liability assumed by an initial common carrier of intrastate commerce in this state, unless it contracts for a greater responsibility, is that it will deliver the shipment to the end of its route, in the proper direction of its destination, to some other competent carrier, carrying to the

place of address, or connected with those who thus carry, and when it has done that its responsibility ceases, subject, of course, to a proper response to the demand of the shipper for proofs that the loss, injury, or unnecessary delay did not occur on its line.

3.  CARRIERS—Delay in Transportation—Measure of Damages. Under section 2869, Rev. Laws, 1910, the detriment caused by a carrier's delay in the delivery of freight is deemed to be the depreciation in the intrinsic value of the freight during the delay, and also the depreciation, if any, in the market value thereof, otherwise than by reason of a depreciation in its intrinsic value, at the place where it ought to have been delivered, and between the day at which it ought to have been delivered and the day of its actual delivery.

4.  DAMAGES—Breach of Contract—Special Damages—Contemplation of Parties. One seeking to recover special damages for breach of contract must show that such damages were within the contemplation of both parties to the contract; otherwise, he can only recover such damages as in the usual course of things flow from the breach.

5.  CARRIERS—Shipment of Freight—Delay in Transportation—Contemplated Damages. In an action for damages occasioned by unnecessary and unreasonable delay in the shipment of freight, only such damages may be recovered as were contemplated, or might reasonably be supposed to have entered into the contemplation of the parties to the contract of carriage, and if the shipper expects to charge the carrier with any special damages, he must communicate to the carrier, at or prior to the time of shipment, all the facts and circumstances of the case which do not ordinarily attend the carriage of such freight, or the peculiar character and value of the property carried; otherwise, such peculiar circumstances cannot be contemplated by the carrier.

(Syllabus by Robberts, C.)

*Error from County Court, Bryan County;*

*J. L. Rappelee, Judge.*

Action by J. T. Foote against the Missouri, Kansas & Texas Railway Company and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

*Clifford L. Jackson, W. R. Allen,* and *M. D. Green,* for plaintiff in error, Missouri, K. & T. Ry. Co.

*W. F. Semple,* for paintiff in error Ramsey.

*Utterback, Hayes & MacDonald,* for defendant in error.

ROBBERTS, C. This action was commenced before a justice of the peace in Bryan county, by the Durant Nursery Company, as plaintiff, against the Missouri, Kansas & Texas Railway Company, as defendant. The plaintiff therein sought to recover from the defendant therein, one of the present plaintiffs in error, the sum of $175.52 and interest. An amended bill of particulars were filed after the case was appealed to the county court, wherein the amount prayed for was $177.82. The action was for the alleged delay by the Missouri, Kansas & Texas Railway Company in the transportation of two shipments of fruit trees from the Durant Nursery Company consigned to J. T. Foote, at Washington, Okla., and Blanchard, Okla., respectively, both of which were delivered to the Missouri, Kansas & Texas Railway Company at Durant on December 3, 1910. Judgment was rendered in favor of the Nursery Company by the justice for $175.52, and the case thereupon was appealed by the Missouri, Kansas & Texas Railway Company to the county court of Bryan county.

On motion of the Missouri, Kansas & Texas Railway Company, the Oklahoma Central Railway Company was made a party defendant in the case, and later, on motion of the Missouri, Kansas & Texas Railway Company, Asa E. Ramsey, as receiver for the Oklahoma Central Railway Company, was substituted as a party defendant in lieu of the Oklahoma Central Railway Company. During the course of the trial in the county court, J. T. Foote, the defendant in error herein, was substituted as plaintiff instead of the Durant Nursery Company, and thereupon filed his bill of particulars, which is as follows, omitting the caption and signatures:

"Comes now the plaintiff, J. T. Foote, of Durant, Bryan county, Oklahoma, by his attorneys, Utterback, Hayes & Mac-

Donald, and .for his cause of action against the defendant, ·the Missouri, Kansas & ·Texas Railway .. Company, a corporation organized and existing under and .by virtue of the. laws of the state .of ——, would respectfully . show to .the court . as follows, to wit:

."That heretofore, to wit, on the 3d day of December, 1910, the said defendant company was a common carrier for hire, with a line running through Bryan county, Oklahoma. That as such common carrier for hire it accepted freight to be transported· by it to the different places in the country, and especially in the .state of Oklahoma; that on said date above alleged, to wit, December 3,· 1910, this plaintiff . had· delivered to the said defendant company two certain shipments of fruit· trees, consigned to .J. T. Foote at Washington, Oklahoma, and the other to J. T.· Foote·at Blanchard, Oklahoma; the bills of lading for the said shipments being attached to ·the original bill of particulars as. filed ·herein, and which are introduced . as exhibits in this cause, and which are hereby specially referred to and made a. part of this substituted and amended bill of particulars, and which said bills of lading. were ·signed by. W. ·H. Reilly, the local agent of the said defendant company.

"That under and by virtue of said contract of transportation the said defendant company agreed and becamebound to deliver the said shipments of trees to the destinations therein stated within a reasonable time, for which transportation .the said plaintiff paid to the said defendant, as ·freight charges, $2.67 on ·.the Washington shipment, and $3.20 on .the Blanchard shipment. That the said defendant company, in contravention of its contract, negligently, unlawfully, and in violation of its agreement, unreasonably delayed the said shipments, to the . damage of this plaintiff in the sum of $177.82; said damage being for the expenses of men in locating the trees and delivering the same after .the delay occasioned by the said negligence of the said defendant company, and which said damage was directly caused by the negligence and unlawfulness of the said defendant company, its agents, and employees, in handling and transporting the said shipments above mentioned.

"Wherefore plaintiff prays that he have judgment against the said· defendant corporation, ·the Missouri, Kansas & Texas

Railway Company, for the said sum of $177.82, with interest thereon from the 24th day of December, A. D. 1910, until paid, at the rate of 6 per cent. per annum, and that he have his costs in this action laid out and expended. As in duty bound, he will ever pray."

On the 11th day of December, 1911, plaintiff in error Missouri, Kansas & Texas Railway Company filed its answer, which is as follows:

"Comes now the defendant, by leave of court first had and obtained, and for its answer to plaintiff's bill of particulars denies each and every material allegation thereof not hereinafter specifically admitted.

"Further answering, defendant states that on or about December 3, 1910, it received from the Durant Nursery Company at its station at Durant, Oklahoma, two shipments, one consigned to J. T. Foote at Washington, Oklahoma, and the other consigned to J. T. Foote at Blanchard, Oklahoma, and defendant states that said shipments were received and forwarded under and by virtue of the terms of two written contracts of shipment, copies of which are hereto attached, marked Exhibits A and B, respectively, and made a part of this answer.

"Further answering, defendant states that by the terms of said contracts it was provided that in issuing said bills of lading this company agreed to transport said shipments only over its own line.

"Further answering, defendant states that by the terms of said contract it was provided that no carrier should be liable for loss, damage, or injury not occurring on its own road, or its portion of the through route, nor after said property had been delivered to the next carrier, except as such liabiilty might be imposed by law.

"Further answering, defendant states that by the terms of said contracts it was provided that the amount of any loss or damage for which the carrier might be liable should be computed on the basis of the value of the property, being the *bona fide*

invoice price, if any, to the consignee, including freight charges, if prepaid, at the place and time of shipment under said contracts, unless a lower value had been represented in writing by the shipper or agreed upon, or was determined by tariffs and classifications.

"Further answering, defendant states that by the terms of said contracts it was provided that in the event of loss or damage to said shipments the value thereof should not exceed five dollars per hundred pounds, and if there is any liability therefore against this defendant, which, however, is denied, same should in no event exceed five dollars per hundredweight.

"Further answering, defendant states that the shipment consigned to Washington, Oklahoma, weighed 752 pounds, and the shipment consigned to Blanchard, Oklahoma, weighed 728 pounds.

"Further answering, defendant states that it transported both of said shipments in due course of its business as a common carrier, and delivered them at Lehigh, Oklahoma, to its connecting carrier, the Oklahoma Central Railway Company, on December 6, 1910, and defendant states that, if there is any liability therefore for any loss or damage to said shipment, such liability is aginst the said Oklahoma Central Railway Company, and not against this defendant, and defendant therefore asks that said Oklahoma Central Railway Company be made a party defendant herein, and be summoned to appear and answer and defend this suit.

"Defendant prays that it be adjudged to go hence without day, with its costs."

Attached to the answer are copies of the bills of lading covering the shipments in question.

On the 19th day of April, 1912, the Durant Nursery Company filed a reply to the answer of the Missouri, Kansas & Texas Railway Company which is as follows:

"Comes now the plaintiff, the Durant Nursery Company, and for its reply to the answer of the defendant the Missouri, Kansas

& Texas Railway Company alleges and would show to the court as follows, to wit:

"The plaintiff denies each and every material allegation of new matter in the answer of the said defendant contained."

On the 19th day of April, 1912, the receiver for the Oklahoma Central Railway Company filed its answer, which is as follows:

"Comes now the defendant Asa E. Ramsey, receiver of the Oklahoma Central Railway Company, and for his answer herein to plaintiff's bill of particulars denies each and every material allegation thereof, except that which is hereinafter admitted.

"I. Further answering, the defendant states that on or about the 6th day of December, 1910, it received at Lehigh, Oklahoma, from the Missouri, Kansas & Texas Railway Company, two shipments of fruit trees, one consigned to Blanchard, Oklahoma, the other to Washington, Oklahoma, receipts for said shipments having been heretofore executed by the Missouri, Kansas & Texas Railway Company to the plaintiff at Durant, on December 3, 1910, copies of which receipts and contract of shipment are attached to the answer of the defendant Missouri, Kansas & Texas Railway Company herein, marked Exhibits A and B, and are made a part of this answer.

"II. This defendant further states that by the terms of the said contract of shipment above referred to it was provided that in event of loss or damage to shipment the value thereof should not exceed $5.00 per hundredweight. That the weight of said shipments is shown by said receipts and contract, and if this defendant is liable at all, which is denied, same should in no case exceed $5.00 per hundred weight, calculated on the basis of the weight shown in said contract.

"III. For further answer this defendant denies that the plaintiff incurred the amount of expense in locating the trees and delivering the same as alleged in this bill of particulars, and states, if such expenses were incurred, they were not necessary in locating the said shipments and delivering same, and this defendant is not liable therefor.

Defendant prays that it may go hence without day and have its costs."

On the 19th day of April, 1912, the Durant Nursery Company filed its reply to the answer of the receiver for the Oklahoma Central Railway Company as follows:

"Comes now the plaintiff, the Durant Nursery Company, and for its reply to the answer of the defendant A. E. Ramsey, receiver of the Oklahoma Central Railway Company, alleges and would respectfully show to the court as follows, to wit:

"Plaintiff denies each and every material allegation of new matter contained in the said answer of the said defendant as set forth in paragraphs first, second, and third of the said answer."

The case was tried to the court and jury, and verdict for plaintiff as prayed. After overruling of motion for new trial, judgment was rendered for $177.82, to draw 8 per cent. interest from date thereof. Defendants bring error.

For convenience, the plaintiff below will be designated as plaintiff, and the defendants below as defendants herein. The conditions under which the Missouri, Kansas & Texas Railway Company received said articles for transportation as expressed in the bill of lading and shipping contract, so far as they relate to the questions involved in this case, are as follows:

(1) "Received, subject to the classifications and tariffs in effect on the date of issue of the original bill of lading, at Durant, Oklahoma, December 3, 1910, from Durant Nursery Company, one box trees, weight 752 pounds, in apparent good order, which said company agrees to carry to its usual place of delivery at Washington, Oklahoma, if on its road; otherwise, to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of the said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all

the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns."

(2)     "In issuing this bill of lading this company agrees to transport only over its own line, and, except as otherwise provided by law, acts only as agent with respect to the portion of the route beyond its own line. No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, axcept as such liability is or may be imposed by law; but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed."

(3)     "No carrier is bound to transport said property by any particular train, or in time for any particular market, or otherwise than with reasonable dispatch, unless by specific agreement indorsed hereon. Every carrier shall have the right in case of physical necessity to forward said property by any railroad or route between the point of shipment and the point of destination. The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper, or has been agreed upon or is determined by the classifications or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amounts to govern such computation, whether or not such loss or damage occurs from negligence. Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after the delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable."

On the face of said contract in typewriting is the following:

"Collect. Released at $5.00 per 100 lbs. and valuation and freight charges guaranteed by shipper."

The other contract is the same as this, except the destination is Blanchard, Okla., and the weight 728 pounds.

The bills of lading are not signed by the shipper, defendant in error; but he bases his cause of action on them, and attached them to his bill of particulars, and made them a part thereof, and afterwards introduced them in evidence to prove his contract of shipment, He will therefore be bound by all the terms and conditions of said bills of lading, as shipping contracts, as fully as if he had personally signed the same.

By the terms of said contracts, expressed in perfectly plain language, the defendant Missouri, Kansas & Texas Railway Company as the initial carrier undertook and agreed with plaintiff: (1) That it would transport his freight over its own lines and no further. (2) That it would not be liable for loss, damage, or injury which did not occur on its own road, or its portion of the through route; nor after said property had been delivered to the next carrier, except such liability as might be imposed by law. (3) That in case of loss or damage to said shipments the value thereof should not exceed $5 per 100 pounds; the shipment to Washington being 752 pounds, and the shipment to Blanchard 728 pounds. The evidence shows, and it is not denied by plaintiff, that the defendant Missouri, Kansas & Texas Railway Company received these shipments on Saturday evening, December 3, 1910, after the last train carrying like traffic had gone out, and, as there was no Sunday train, the shipments did not leave Durant until Monday morning, December 5th, and were delivered to the defendant Oklahoma Central Railway Company at Lehigh, Okla., on the next day.

It is conceded that both destinations, Washington and Blanchard, are not on the Missouri, Kansas & Texas, but are on the Oklahoma Central. The evidence is somewhat conflicting as to date of receiving destinations—plaintiff claiming the 24th, and

the defendants the 21st, of December. In either case it would seem that the delay was unreasonable, and the jury must have so found. There is no claim for loss or damage to the trees, nor depreciation in value—only such damage as was caused by reason of the delay in reaching destinations. The evidence shows, and the plaintiff admits, that he never made the statutory demand on the Missouri, Kansas & Texas Railway Company to furnish proofs and facts as to which road caused the delay, or that the loss or injury did not occur while the shipment was in the possession or in charge of its road, as provided in section 846, Rev. Stat. 1910 Ann., which is as follows:

"If freight addressed to a place beyond the usual route of the common carrier who first received it, is lost or injured, he must, within a reasonable time after demand, give satisfactory proof to the consignor that the loss or injury did not occur while it was in his charge, or he will be himself liable therefor."

Plaintiff did demand payment for the damage caused by the delay, but under the rulings of this court that did not satisfy the requirements of the statute. The law applicable to the facts in this case, fixing the duty of the shipper, is laid down and clearly defined in the recent case of *C., R. I. & P. v. Diggs,* 42 Okla. 183, 140 Pac. 1160, by Judge Rittenhouse, speaking for the court, in which he says:

"In the absence of proof on the question as to whether the injury occurred while the goods were in possession of the initial or the connecting carrier, it will be assumed that the goods were in the same condition when delivered to the connecting carrier that they were in when received by the initial carrier, and, if the shipment was damaged when it reached its destination, there is no presumption that the injury occurred while the goods were in the hands of the initial carrier."

In that case the claimant made inquiry of the initial carrier as to the location of the goods, but made no demand for the proofs

provided for in the statute (section 846, *supra*), and upon the sufficiency of such inquiry the court says:

"It is evident that the plaintiff did not bring himself within the provisions of" that section, "and therefore cannot claim the benefits derived therefrom."

The liability of carriers, in this particular, is clearly defined and well established by the laws of this state. The only liability assumed by an initial common carrier of intrastate commerce in this state, unless it contracts for a greater responsibility, is that it will deliver the shipment to the end of its route, in the proper direction of its destination to some other competent carrier carrying to the place of address, or connected with those who thus carry. When it has done that, its responsibility ceases, subject, of course, to a proper response to the demand of the shipper for proofs that the loss or injury did not occur on its line. As said in the Diggs Case, *supra*:

"Under section 845, the initial carrier, in accepting an intrastate shipment of freight to a point beyond its own line, must deliver the same to the connecting carrier, having made such delivery, its liability ceases."

We are of the opinion that the law, as to the damage or entire loss of the goods, would apply to the question of injury caused by delay, so far as it relates to the manner of fixing the liability of the carrier; but it is not necessary to seek to apply that rule here, for the plaintiff says he did not demand of the Missouri, Kansas & Texas Railway Company as initial carrier proofs and facts as to which road was responsible for the delay, and as a matter of fact such a demand would have been unnecessary in this case, except for the purpose of holding the initial carrier, for the reason that it was well established by the evidence that the shipments were delivered to the connecting carrier within a reasonable time, to wit, the 6th day of December. In the case of *St. L. & S. F. R. R. Co. v. Close*, 42 Okla. 105, 140 Pac. 1176,

*St. L. & S. F. R. R. Co. v. Close,* 42 Okla. 105, 140 Pac .1176, a like question arose in an action for damages caused by the delay in shipment of a merry-go-round. The Frisco was the initial carrier, and was not the cause of the delay. In speaking as to the liabilty of that road, the court says:

"It is clear, from our constitutional and statutory provisions, that it is the duty of the connecting carrier to accept shipments of freight under such circumstances, unless a valid reason for refusal exists, and that the liability of the initial carrier ceases when such delivery is made. There is no denial that the Frisco delivered the shipment promptly and tendered same to the Midland Valley, and that all the delay in further transportation was chargeable to the Midland Valley. * * * It follows, therefore, that the initial carrier was under no further obligation than to promptly deliver the shipment to a connecting carrier and that it is the duty of such connecting carrier to forward same without delay. It is apparent, under the record and the foregoing provisions of our Constitution and statutes and the authorities above, that, whatever damages the plaintiff may have shown himself entitled to recover, the Frisco was not liable therefor. It had discharged every obligation which the law imposed upon it under the circumstances."

The decision is in strict accord with section 845, Rev. Laws 1910, which is as follows:

"If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier, carrying to the place of address, or connected with those who thus carry, and his liability ceases upon making such delivery."

So it must be conceded in this case that, whatever damages the plaintiff may have sustained, the Misouri, Kansas & Texas Railway Company is not liable; for by the delivery of these shipments to the connecting carrier on the 6th day of December it discharged every obligation it had assumed under the contracts

of shipment and which the law imposed upon it. Under the facts, and the plain language of the statute, the Missouri, Kansas & Texas was in no sense blamable for the delay or injury, if any, occasioned thereby.

This brings us to the question of the liability of the Oklahoma Central Railway Company as connecting carrier. The evidence shows that the delay occurred on that road, and that it was unnecessary and unreasonable; but the question of the right of plaintiff to recover damages for the class and kind of injury alleged is a more difficult proposition. It will be borne in mind that plaintiff's only cause of action is for the recovery "of damage for expenses of men in locating trees and delivering the same after the delay occasioned by the negligence of the company." No damage was claimed for injury to the trees, nothing for depreciation in intrinsic value, and nothing for depreciation in the market value thereof. No special time was agreed upon for the delivery of the shipments. The bill of particulars does not charge, and bills of lading and shipping contract do not show, and there is no evidence tending to prove, that either of the defendants knew, or had any notice of the purpose for which the trees were being shipped, or that plaintiff was expecting or intending to deliver the trees to his customers on the 17th day of December, or at any other time, or that he had employed any one to be at the places of destination for any purpose. Nothing of the kind was alleged or proven. Under such circumstances, would the plaintiff be entitled to recover, and, if so, what would be the measure of damages? Section 2869, Rev. Laws 1910, provides:

"The detriment caused by a carrier's delay in the delivery of freight is deemed to be the depreciation in the intrinsic value of the freight during the delay, and also the depreciation, if any, in the market value thereof, otherwise than by reason of a deperciation in its intrinsic value, at the place where it ought to have been delivered, and between the day at which it ought to have been delivered and the day of its actual delivery."

This section came before this court for construction in the case of *C., R. I. & P. v, Broe*, 16 Okla. 25, 86 Pac. 441. That action was to recover for delay in shipment of a car load of nails and wire. As a part of the measure of damages claimed by plaintiff was the loss of trade during the delay of the freight, and that question was submitted to the jury in the following interrogation:

"Q.  If you find for the plaintiff, state by what you measure the amount of his damages.  A.  Depreciation in value of goods, and loss in trade."

In reversing this case Justice Burwell says:

"The jury had absolutely no justification for allowing the consignee anything for loss of trade.  There was no evidence on which to base such a finding, and, even if there had been, it could not be considered, as the carrier's liability is fixed by the statute above quoted (section 2869), and loss of trade is not referred to therein.  From the record we cannot determine the amount awarded for loss of trade.  It cannot be separated from the award for depreciation of the market value of the property."

As stated before, in the instant case neither of the railroad companies had notice of the intentions of the plaintiff to dispose of the shipments, nor of the fact that he was contemplating expenses of any kind in that behalf.  Such expenses and subsequent damages were not in contemplation of the company or in the mind of the employees of the defendants at the time of the shipments.  Speaking upon that subject, the Supreme Court of the state of Florida in *Williams v. Atl. Coast Line R. R. Co.*, 56 Fla. 735, 48 South. 209, 24 L. R. A. (N. S.) 134, 131 Am. St. Rep. 169, say:

"Only such damages may be recovered as were contemplated or might reasonably be supposed to have entered into the contemplation of the parties to the contract of carriage.  If the owner of the goods would charge the carrier with any special damages, he must have communicated to the carrier all the facts and circumstances of the case which do not ordinarily attend the carriage or the peculiar character and value of the property

carried, for otherwise such peculiar circumstances cannot be contemplated by the carrier."

That was a case in which the shipper transported orange boxes to be used in packing a crop of oranges, and preparatory thereto he had employed men for that purpose, who were awaiting the arrival of the boxes; but it appears that the shipper failed to notify the carrier of his intentions in regard to the use of boxes. In consideration of the case the court further says:

(1) "In an action against a railroad company for damages caused by the failure of the company to deliver within a reasonable time orange boxes intrusted to the defendant to transport for hire, the plaintiff cannot recover the loss and damage in the enforced idleness of persons employed to pack and ship his oranges on his orange groves, where the defendant was not informed that men had been employed to pick the oranges, or the time within which the oranges were to be picked, and the contract of carriage did not fix any specific time for the transportation and delivery of the boxes.

(2) "In an action against a railroad company for damages caused by its failure to transport and deliver orange boxes, within a reasonable time, the allegations of the declaration, 'that by reason of the premises the plaintiff incurred loss and damage in being unable to pack and ship part of his oranges for the Christmas market,' are not stated with such certainty as to show the liability of the defendant therefor."

(3) "The freezing of plaintiff's oranges on the trees is not so direct, natural, and proximate a result of the failure of a railroad company to deliver to the plaintiff, within a reasonable time, orange boxes intrusted to the defendant company to transport for hire, as to make such company liable therefor by reason of such delay, where the contract of carriage did not fix any specific time for the transportation and delivery of the boxes, and the defendant company was not informed that the plaintiff would leave the oranges on the trees, exposed to the dangers of the cold, until the boxes were deliverd."

The items of damage claimed by plaintiff are railroad fare of men sent to the different destinations to distribute the trees to customers, hotel expenses, telephone calls while there, their railroad fare back to their respective residences, and other such like expenses. These items certainly could not have been in contemplation of the parties at the time the shipping contract was entered into. There is nothing in the pleadings or the evidence that even tends to establish such a condition. The rule laid down in *Hadley v. Baxendale,* 9 Ex. Ch. 341, Sedgwick's Leading Cases on Measure of Damages, 126, which has been followed by the Supreme Court of the United States and most of the states of the Union, establishes this doctrine:

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally, according to the actual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of it."

In the case of *Illinois Central Ry. Co. v. Johnson,* 116 Tenn. 624, 94 S. W. 600, parties had the contract for boring a deep well in the state of Arkansas, and in contemplation of such work they delivered to the railroad company machinery for the purpose of doing the work. The party who made the shipment stated to the agent of the company that the machinery was needed right away, and that the shipment was for immediate delivery—that the shipper was at heavy expense in keeping a crew awaiting the arrival of the shipment for the purpose of carrying out the contract. The shipment was delayed, and the parties brought suit. Under that state of facts, recovery was denied, and in so doing the court said:

(1) "One seeking to recover special damages for breach of a contract must show that such damages were within the contempla-

tion of both parties to the contract; otherwise, he can only recover such damages as in the usual course of things flow from a breach.

(2) "Plaintiffs, having a  *  *  *  contract in Arkansas for the boring of a deep well, shipped certain pipe therefor over defendant's railroad, and at the time notified defendant's agent that the pipe was needed very badly, and that they were putting in another well at some place in Arkansas. Held, that such information did not give the carrier notice that plaintiffs had a contract which would be forfeited in the event of a failure to deliver the pipe promptly, or that plaintiffs were boring the well for others than themselves, and was insufficient to charge the carrier with loss of profits occasioned by a cancellation of the contract for delay and loss sustained in the purchase of other appliances for the work."

The Supreme Court of Kansas, having a like question under consideration in *Sauter v. Santa Fe Co.,* 78 Kan. 331, 97 Pac. 434, held:

"A mere statement of the station agent of a railroad company, to one about to deliver goods to the company for shipment over its railroad, that the goods should arrive at the proposed destination at a certain time, does not constitute a contract to carry them within such time."

It seems entirely unnecessary to cite further authorities along this line. The defendant in error neglected to file briefs, but, notwithstanding that fact, we considered the case of such importance that we felt it was our duty to consider it to some extent. This we have done without the aid of counsel for defendant, but, being clearly of the opinion that the doctrines herein laid down are supported by practically an undivided line of authorities, we are forced to the conclusion that this case should be reversed and remanded, with instructions to the trial court to render judgment in favor of the defendants.

By the Court: It is so ordered.