### EASON OIL CO. et al. v. WHITESIDE.

No. 25601.   Oct. 15, 1935.

Rehearing Denied Dec. 10, 1935.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiffs in error.

W. C. Austin and Robert B. Harbison, for defendant in error.

PER CURIAM.   The defendant in error, hereinafter styled plaintiff, commenced this action against the plaintiffs in error, hereinafter styled defendants, seeking to recover damages for breach of contract, plaintiff alleging that on the 4th day of April, 1929, and prior thereto, he was the owner of real property in the city of Altus, Okla.; that said property was located in the same locality, and that some months prior to the date above mentioned, plaintiff conceived the idea of building a business center on several of his lots. In pursuance of this plan, plaintiff erected a business building. The main business, or "key business," as plaintiff expresses it, was a filling station, which plaintiff alleges he installed and operated until the date above mentioned; that said filling station was fully stocked, equipped with all of the latest filling station equipment, and operated in a high class and efficient manner. Other rooms in plaintiff's building were rented to various tenants, one of which was a grocery man, one a barber, and the other a machinist.

Plaintiff further alleges in his petition that his intention was to operate the filling station in such an efficient manner that it would attract trade; that if trade was attracted to his corner by the filling station service, the customers would trade with the other lines of business occupying space in his building, and that by reason thereof his building would be increased in value as well as his surrounding property.

Plaintiff alleged that shortly before the date above mentioned, one Jim Montgomery, representing the Eason Oil Company, approached him with the idea of leasing said filling station for his company; that on the 4th day of April, 1929, plaintiff did lease said filling station; that at the solicitation

of Jim Montgomery the lease was made in favor of the Bolene Refining Company, instead of the Eason Oil Company; plaintiff being informed by Jim Montgomery at that time that the Bolene Refining Company was the operating company of the Eason Oil Company, or that it was a subsidiary of the Eason Oil Company. Plaintiff also contends that he should have judgment against both companies, in view of the fact that the Bolene Refining Company is merely a sister or subsidiary of the Eason Oil Company, with the same personnel and management, and for the further reason that the Eason Oil Company, soon after this transaction, absorbed the Bolene Refining Company, and the lease above mentioned was assigned to the Eason Oil Company.

Plaintiff further alleged that the defendants breached the lease made with him in that the defendants failed to operate the filling station in a superservice manner and failed to maintain tire service and other up-to-date filling station service as defendants had agreed to do in their lease; that from the time of the making of the lease up to the time of the filing of the suit, the defendants sublet the station to operators who were incompetent, failed to render proper service to the public, failed to maintain a full stock of accessories, and allowed their equipment to become worn and out of repair; that by reason thereof the public failed to patronize this filling station, and that the other tenants of plaintiff lost the business that they would otherwise have had from that part of the public who would have traded with the filling station, and, as a result of said conduct of defendants, plaintiff's tenants could not pay the rentals they had agreed to pay plaintiff; that plaintiff was forced to reduce their rent and suffered loss thereby; that he suffered loss by reason of the depreciation in the value of his building and his adjoining property, by reason of the conduct of defendants; that he was to receive as rent on said lease from the defendants two cents (2¢) on each gallon of gasoline sold, and that he suffered a monetary loss by reason of the reduced income he received from defendants; plaintiff alleging his entire loss to be $31,595. In due course the case was tried to a jury and resulted in a verdict for the plaintiff against both defendants in the sum of $1,934, the jury specifying that this amount was for loss of rentals.

As this case must be reversed for a new trial, we do not deem it necessary to decide all points raised by defendants on this ap-

peal. Defendants contend that their demurrer to plaintiff's evidence should have been sustained, and complaint of the error of the trial court in not directing a verdict for them at the close of all the evidence. They base their rights to this relief on the proposition that the elements of damage asked for by plaintiff, to wit, loss of rentals and depreciation in the value of his property, were remote, conjectural, speculative, not capable of ascertainment with any degree of certainty, not within the contemplation of the parties at the time of the making of the contract, and not the probable result of any breach of said contract.

We are of the opinion that the trial court erred in allowing the jury to consider the element of damage for depreciation of the value of plaintiff's real estate and in allowing the jury to consider the element of loss of rents from the property of plaintiff, with the exception of the filling station.

The evidence bearing on the knowledge of the defendants as to the purpose of plaintiff in requiring them to run his filling station in a superservice manner, came mainly from the plaintiff himself; plaintiff testifying that shortly before the lease contract was entered into between the parties, he had a conversation with Jim Montgomery, in the city of Altus, in which the plaintiff told Jim Montgomery that the manner in which the station was operated represented his entire investment on that street; that during the course of the conversation he walked out to the front of the filling station with Jim Montgomery and showed him the property which he owned; that Montgomery stated to him that he felt that his company was more capable of operating the station in a superservice manner, more satisfactorily, than plaintiff; that plaintiff stated to Montgomery that they might be, but that on account of his interest he might want to operate the station at a loss even, before he would want to cut down on expense, in view of the investment that he had.

Plaintiff further testified that he stressed particularly, both during said conversation and at the time the lease was drawn at Enid, that his investment around the filling station was dependent upon the proper operation of the station. Plaintiff also testified that he called to Mr. Montgomery's attention the component lines of business, or rather the businesses carried on in the adjacent rooms as an aid to and part of his business venture at that place. Jim Montgomery testified on behalf of the defendants and denied

that plaintiff told him of the matters that plaintiff testified to, but says that plaintiff did tell him that he owned adjoining property.

Nothing was said in the lease regarding these adjacent businesses, and plaintiff, in his petition, seeks to reform the contract so as to have it read that the parties did have in mind the adjacent property at the time they entered into the lease, and that plaintiff entered into the lease on the representation of defendants' agent that defendants would operate the station in such a manner that plaintiff's income and investment would be upheld.

The trial court made no specific ruling on plaintiff's request to reform the contract. The plaintiff was not entitled to have this lease reformed for the reason that there was no showing by the plaintiff that there was any misrepresentation, fraud or mistake of fact mutual to both parties at the time the lease contract was entered into, and for the further reason that the evidence shows that the plaintiff was an attorney at law, versed in drawing contracts, drew the lease contract in question, and was negligent if he left anything out of said lease contract that he desired to have therein.

The case of Eagle Creek Oil Co. v. Illinois-Oklahoma Petroleum Corporation, 141 Okla. 122, 284 P. 43, in discussing these questions, lays down the following rule:

"But where parties enter into a solemn agreement and reduce that agreement to writing, this agreement, in the absence of fraud, overreaching or mutual mistake, must be upheld and the business of the country, so far as evidenced by written instruments, stabilized, and equity, having regard for the sanctity of agreements, changes them only with reluctance, and requires proof that the written instrument does not express the real contract, and that the error, if any, was occasioned through mutual mistake, and the evidence must be clear, satisfactory, and free from doubt, and show that the party who seeks reformation was himself free from neglect in the making of the agreement. Heard v. Nancolas (Iowa) 175 N. W. 13."

Without deciding whether the depreciation in the value of plaintiff's real estate and the loss of his income could be considered as an element of damage with or without the reformation of the contract, we do not believe that the evidence in this case was sufficient to show that the damages which plaintiff alleges he suffered, with the exception of loss of income from the filling station, were such as might fairly and reasonably be considered

as arising naturally, according to the actual course of things, from a breach of the lease, or were such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract.

Courts must draw the line somewhere in considering what damages flow from the breach of a contract, and parties must not be allowed to go far afield in seeking such damages. We do not believe that the evidence of plaintiff is sufficient to show that the fact that plaintiff would suffer damages if the filling station was not properly operated was sufficiently called to the attention of the representative of the defendants so that it could be said that it was in the contemplation of the representative of the defendants, as well as the plaintiff, that plaintiff would suffer loss of income from his building, with the exception of the filling station, and suffer loss by reason of the depreciation in the value of his property in case the defendants did not properly operate the filling station.

The rule in cases of this nature is well set forth in the case of Missouri, K. & T. Ry. Co. et al. v. Foote, 46 Okla. 578, 149 P. 223, wherein it is said:

"One seeking to recover special damages for breach of contract must show that such damages were within the contemplation of both parties to the contract; otherwise, he can only recover such damages as in the usual course of things flow from the breach."

" 'Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally, according to the actual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of it'."

See, also, Beindorf v. Thorpe et al., 126 Okla. 157, 259 P. 242. Section 9963, Okla. Stats. 1931, is the applicable section laying down the proper rule for the measurement of damages flowing from the breach of an obligation arising from contract. The section is as follows:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract, which

are not clearly ascertainable in both their nature and origin."

We believe that if the lease has been breached, plaintiff is entitled to damages for such loss of income as he can establish from the filling station. In view of the fact that it is impossible to tell from the jury's verdict what portion thereof, if any, was awarded for loss of rental from the filling station, and what portion, if any, was awarded from loss of rentals from the other part of plaintiff's property, we are reversing this case for a new trial with permission to the plaintiff to amend his petition, if he so desires, to ask for damages occasioned by loss of rentals, if any, from the filling station alone, and with directions that on the trial of this case in the lower court, the issues be confined to the one proposition as to whether or not plaintiff has suffered loss of income from his filling station by reason of conduct of the defendants.

Reversed for further proceedings.

The Supreme Court acknowledges the aid of Attorneys Logan Stephenson, William M. Taylor, and Clarence A. Warren in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and fact was prepared by Mr. Stephenson and approved by Mr. Taylor and Mr. Warren, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON. JJ., concur.