KUNEY, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*February 13—May 6, 1924.*

*Carriers: Negligence in storing goods at destination: Evidence as to damages: Question for jury: Discrimination.*

1. A carrier of seed potatoes from Wisconsin to New Orleans which piled them, upon arrival in New Orleans in good condition, in a solid mass in an open shed without ventilation between the sacks, in consequence of which they became wet, mouldy, and unfit for seed by the time the consignee was required to accept and remove them, is negligent, a carrier being held to knowledge of the proper method of handling and storing a commodity which it accepts for shipment. p. 573.
2. The contract price of the potatoes, which were rejected by the consignee as unfit, is some evidence of the value thereof. p. 573.
3. Evidence of the contract price of the potatoes, which were marked as "seed potatoes" when delivered to the carrier, the retail value of food potatoes, and the market value of the particular potatoes for food by reason of their sale by the carrier after rejection by the consignee and an offer of pur-

chase made to the consignor, is sufficient to take the question of the latter's damages to the jury, though it did not notify the defendant that they were shipped under a contract for seed potatoes. p. 574.

4. A judgment against the carrier for damages to the consignor from the negligent storage of the potatoes is not void as creating a discrimination inhibited by the federal law. p. 574.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Affirmed*.

This is an appeal from a judgment for $1,743.59 rendered upon the special verdict of the jury.

The case was submitted to the jury on the theory that the carrier was negligent in handling the shipment after its arrival in New Orleans. The case was submitted to a jury on a special verdict, the verdict of the jury being as follows:

"(1) Did the terminal carrier, by any act of neglect in its handling and protection of the shipment of potatoes in question between the morning of December 31, 1920, and 10 o'clock a. m. of the following Tuesday, materially damage the said potatoes? *A.* Yes.

"(2) If you answer the first question 'Yes,' then answer this: Was the damage so done to the potatoes by the terminal carrier the cause of the rejection of the shipment by the consignee, Reuter? *A.* Yes.

"(3) If you answer the first question 'Yes,' then answer this: In what sum were the said potatoes diminished in value by injury thereto by the acts and neglect of the terminal carrier during the period stated in the first question? *A.* $1,665.70.

"(4) If you answer the second question 'Yes,' then answer this: What further loss, if any, did plaintiff suffer thereafter by reason of the rejection by Reuter of the said shipment? *A.* None."

After the verdict the defendant moved the court for a judgment notwithstanding the verdict, to change the answers in the verdict, and for a new trial, which motions were denied and judgment was entered for the plaintiff. Defendant appeals and assigns as errors: that the court

erred in not granting defendant's motion for a directed verdict; in not granting defendant's motion for judgment notwithstanding the verdict; in not granting its motion to change the answer in the verdict; in not limiting the damages found by the jury to ·nominal damages; and. in denying its motion for a new trial.

In October, 1920, the plaintiff, operating under the name of Sunset Farms, near Three Lakes, Wisconsin, entered into a contract with.one Chris Reuter, of New Orleans, to sell him 700 bushels of seed potatoes at $3.36 per bushel, f. o. b. New Orleans, the shipment to be made the following December 15th. Reuter paid plaintiff $200 at the time the contract was executed, and agreed to pay the balance. on sight draft with bill of lading attached on arrival of the car at destination.

The potatoes were shipped by the plaintiff from Three Lakes December 24th over defendant's railroad. The car was prepared for the shipping of the potatoes by the plaintiff. He put a false floor and bulkheads in the car, and the sides and floor were papered. The potatoes were put in two-bushel sacks and piled in the car in tiers at either end, sloping down towards the middle, and in the middle a stove was placed, so arranged as to keep the potatoes from freezing. A tag was attached to each sack, furnished ·by the Horticultural Society of the University of Wisconsin, and was marked "Seed potatoes." A man employed by the plaintiff accompanied the car below the frost line, to keep fire in the stove as needed to protect the potatoes against the frost. Sufficient circulation was supplied in the car by its movement.

The potatoes were in first-class. condition when shipped, and arrived in New Orleans December 31, 1920, and were unloaded by the carrier on the afternoon of that day into its freight shed. The potatoes were carefully examined by defendant's employees and found to be in good condition at the time of unloading. The potatoes were unloaded in an

open shed and were piled closely together. in a solid pile to a height of at least five feet. The consignee was notified of the arrival of the potatoes, and came to the warehouse and inspected the potatoes on January 4th. He found the potatoes mouldy and wet, and refused to accept the same. January 1, 1921, came on Saturday, and Saturday was a legal holiday. The consignee had forty-eight hours to remove the potatoes, Sundays and legal holidays excepted, so that he had until 10 o'clock on Tuesday, January 4, 1921, to accept the potatoes. At the request of the consignee a government inspector inspected the potatoes and found them mouldy, rotting, and unfit for seed.

On January 5th the consignee notified the plaintiff of the condition of the potatoes—that they were unsuitable for seed purposes, and that they were unacceptable. On the same day the plaintiff notified the railroad carrier that unless "the car is accepted we will hold you responsible." After some correspondence between the plaintiff and defendant, the potatoes were sold at public auction by the defendant, and the net proceeds tendered to the plaintiff. The tender was refused, and the plaintiff brought his action for the value of the carload of potatoes.

*Samuel H. Cady* of Milwaukee, for the appellant.

*A. J. O'Melia* of Rhinelander, for the respondent.

The following opinion was filed March 11, 1924:

CROWNHART, J. The issues as stated on appeal by the defendant are: (1) Assuming that the delivering carrier was negligent in its handling of the shipment after the potatoes arrived in New Orleans and during the continuation of its liability as a common carrier, then is there any evidence in the record upon which to measure plaintiff's damages? (2) Was the delivering carrier negligent in its handling of the shipment after the potatoes arrived in New Orleans and during the continuation of its liability as a common carrier? (3) Does the judgment create a discrimination inhibited by federal law?

It seems that potatoes shipped from the cold, midwinter climate of the north into the mild and humid atmosphere of New Orleans will immediately sweat upon being exposed to the air, unless the potatoes are piled in such a way as to give the same adequate ventilation. From this sweating the potatoes will very shortly begin to mould and deteriorate in quality. The defendant's warehouse was merely an open shed, and the potatoes, according to the evidence, were piled in a solid mass in this shed, so that there was no ventilation between the sacks. The potatoes arrived in New Orleans in first-class condition, but by the time the consignee was required to accept the potatoes they had become wet, mouldy, and unfit for seed. Upon these facts the jury predicated the negligence of the defendant, and we think properly so. The defendant must be held to knowledge of the proper method of handling and storing the commodity which it accepts for shipment.

The jury found that the condition of the potatoes caused by the negligence of the defendant was the cause of the rejection of the shipment by the consignee. This finding was based upon the undisputed evidence. The jury further found that plaintiff's damage amounted to $1,665.70. It is claimed by the defendant that this verdict was not based upon the evidence, and this is the really important assignment of error. It was claimed that the plaintiff did not notify the defendant that the potatoes were shipped under the contract for seed, and that is true unless the defendant can be held to have had notice by reason of the fact that the potatoes were shipped to the consignee, each sack being duly tagged and marked as seed potatoes. The defendant knew when unloading the potatoes in the warehouse that they were seed potatoes, and it is in evidence that seed potatoes commanded a higher market value than food stock. There is evidence in the record of the contract price, which is some evidence of value. *Feelyater v. C., M. & St. P. R. Co.* 178 Wis. 362, 190 N. W. 193. There is some evidence of the retail value of food potatoes, and there is evidence of the

market value of these particular potatoes for food by rea-
son of their sale and of an offer of purchase made to plaint-
iff. This evidence, it is true, is not very satisfactory as to
the market value on January 5th, but it is all the evidence
that is in the record on that subject, and we think it suffi-
cient to take the question to the jury. The jury found the
market value as less than the contract price, and hence did
not consider the contract price as the only evidence of the
measure of damages. There are no exceptions to the judge's
charge. We find nothing in the federal law that prohibits
recovery under the facts of this case.

*By the Court.*—The judgment of the circuit court is af-
firmed.

A motion for a rehearing was denied, with $25 costs, on
May 6, 1924.