# Wood & Company, Appellee, v. Chicago, Milwaukee & St. Paul Railway Company, Appellant.

## Gen. No. 29,253.

1. DAMAGES—*rule of measure of damages for failure of carrier to deliver goods.* In an action against a carrier for failure to deliver an interstate shipment of goods the measure of damages should be determined by the rules of the common law as interpreted and applied in the federal courts or as modified by the federal statutes.

2. DAMAGES—*measure for failure of carrier to deliver seasonal goods.* In an action by the consignee of a carload of near beer for damages for failure to deliver it during the summer season, when it could be sold, the measure of damages was the difference between the salvage value and the market value at the destination during the season when it should have been delivered.

3. VALUES—*price as evidence of value on issue of damages.* The wholesale price at which the consignee of a carload of near beer had sold it to his customers was proper evidence of its reasonable market value at the time it should have been delivered, in an action by such consignee against an interestate carrier for failure to deliver the beer until the season in which it could be used had passed.

4. DAMAGES—*computation of damages for failure of carrier to deliver freight.* In determining the amount of damages to be allowed the consignee of goods which went astray and were not located until the season had passed when they could be used so that they were returned to the consignor, it was not necessary to deduct the proportion of plaintiff's overhead charges which plaintiff estimated represented the cost of delivering similar goods to customers when there was nothing in the record to indicate that plaintiff's overhead charges did not remain the same whether it handled a given shipment or not.

Appeal by defendant from the Municipal Court of Chicago; the Hon. FRANCIS BORRELLI, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Affirmed. Opinion filed April 29, 1925. Rehearing denied May 15, 1925.

CHARLES R. SUTHERLAND and WILLIAM L. HUNTER, for appellant; M. L. BLUHM, of counsel.

H. C. LUST and MADDOCK, JAFFE & GREEN, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant seeks to reverse a judgment for $813.36, recovered against it by the plaintiff in the municipal court of Chicago, in an action in which the plaintiff sought to recover damages, by reason of the alleged negligence of the defendant in failing to deliver 450 cases of near beer.

The record shows that the plaintiff purchased the beer from the Pabst Brewing Company of Milwaukee, Wisconsin. The plaintiff was located at Breckenridge, Texas. The Pabst Brewing Company shipped the beer to the plaintiff about the first of July, 1920, by the defendant railway and drew a draft on the plaintiff for the purchase price, which was $1,340.77, and forwarded it to a bank at Breckenridge, with bill of lading attached. The plaintiff took up the draft and obtained the bill of lading. The shipment should have reached the plaintiff some time before the middle of July. It went astray, however, and was not located until about the middle of September, and then the car was found in St. Louis, Missouri. The plaintiff was then notified by the defendant as to the whereabouts of the car and was asked if they still wanted it, and they replied that the season was over and they did not want it. The car was returned to the Pabst Brewing Company, at Milwaukee, and that company allowed the plaintiff $1,300.77,— that being the invoice price less a charge of $40 for cartage,—and they sent the plaintiff a remittance for $1,300.77, by reason of the fact of the nondelivery of the beer. The plaintiff then brought this action to recover the difference between this amount, which had been realized in the way of salvage on the car, and the amount for which they had sold the beer at

Breckenridge prior to the time when it should have arrived. The only question involved on this appeal is, What is the proper measure of the plaintiff's damages? The shipment involved being an interstate shipment, the correct measure of damages is a federal question and should be determined by the rules of common law as interpreted and applied in the federal courts or as modified by the federal statutes. *Yazoo & M. Val. R. Co. v. Delta Grocery & Cotton Co.*, 134 Miss. 846. As pointed out in that case, the Cummins Amendment of section 20 of the Interstate Commerce Act provides that carriers must issue a bill of lading and "shall be liable to the lawful holder thereof * * * for the full actual loss, damage or injury to such property (covered by the bill of lading) caused by it," or by any connecting common carrier, notwithstanding any attempted limit of liability contained in the bill of lading. This was the rule of damages at common law. The Mississippi court then refers to the case of *Chicago, M. & St. P. Ry. Co. v. McCaull-Dinsmore Co.*, 253 U. S. 97, where the court referred to the foregoing provision of Cummins' Amendment and held that "the actual loss caused by a breach of a contract is the loss of what the contractee would have had if the contract had been performed, less proper deductions." Applying this decision of the U. S. Supreme Court to the facts presented in the *Mississippi* case, the court held that the measure of the plaintiff's recovery in a case where goods had been so damaged in the course of shipment as to be useless was the actual value of the lost property, at the point of destination, which was to be based on the market value of the property at that place at the time the plaintiff should have received it in good condition. The plaintiff in that case was a wholesaler, who bought only in carload lots. The plaintiff in the case at bar was also a wholesale grocer, and the shipment involved here,

which went astray, amounted to a carload. The recovery allowed the plaintiff in the *Mississippi* case represented what the plaintiff there could have sold the damaged goods for, or the "reasonable wholesale cash market value at the point of destination."

In proving a basis for its damages in the case at bar, the plaintiff proved that there was no market in Breckenridge at the time in question for the goods involved in this purchase in carload lots, but that it had sold the 450 cases involved in this carload shipment to various purchasers, one sale amounting to 100 cases and the others being for various amounts,— the buyers being the proprietors of soft drink businesses in Breckenridge and vicinity,—at $5.25 a case, which was testified to be "the wholesale market price of the beverage" at the time in question. In our opinion, that proof was proper. *Yazoo & M. Val. R. Co. v. Delta Grocery & Cotton Co., supra; Kuney v. Chicago & N. W. Ry. Co.,* 183 Wis. 569, 197 N. W. 708; *Feelyater v. Chicago, M. & St. P. Ry. Co.,* 178 Wis. 362, 190 N. W. 193; *Coulter v. Gulf, C. & S. F. Ry. Co.* [Tex. Civ App.], 248 S. W. 788.

The record shows that the goods involved in this case were purchased for the summer season trade, and that when the car was finally located in September the season was over, so that the shipment was useless as far as the plaintiff's business was concerned. In that situation the plaintiff was justified in notifying the defendant that it would not accept the shipment and suggesting that it be returned to the Pabst Brewing Company for salvage. The plaintiff was then entitled to recover the difference between the salvage and the fair market value of the beer at Breckenridge in July. The wholesale price at which the plaintiff had sold the beer was proper evidence of its reasonable wholesale market value at that time.

The defendant argues that the price at which the plaintiff had sold this beer at Breckenridge was in

reality a retail price, and that the plaintiff should not be allowed to recover on the basis of that price, citing *Chicago, R. I. & P. Ry. Co. v. Broe,* 16 Okla. 25, 86 Pac. 441. The record shows that the price on which the recovery was based was not the retail price, but the wholesale market price. The defendant seems to contend that the recovery for the plaintiff should have been based on the market value of a carload lot, as a single sale at Breckenridge in July, 1920. If that were used as a basis of recovery there would be few instances, if any, in which there would be a recovery, at least in the case of shipments to comparatively small towns or cities. The evidence in this record shows that there was no market for a carload lot in a single sale at Breckenridge, and that the nearest point at which there was any market for carload lots, of the commodity involved in this shipment, was Milwaukee, Wisconsin. In our opinion, the cases cited furnish ample authority to sustain the method of computing the plaintiff's damages, which was used in the case at bar.

But the defendant contends that even on that basis the measure of damages recovered by the plaintiff was wrong, because proper deductions were not made in merely subtracting the salvage value of this car,—$1,300.77,—from the reasonable wholesale market value, which was $2,362.50. It will be seen that the difference between those amounts is $1,061.73. The judgment recovered amounted to $813.36. Presumably, the difference between those two amounts represents the freight the plaintiff would have been obliged to pay for the shipment if it had gone through and been accepted. But the defendant claims that there should have been a further deduction representing the distribution costs. In our opinion, this contention is not tenable. There is evidence in the record, as pointed out by the defendant, that in distributing its overhead expenses, the plaintiff figured that its cost

of distribution in the case of such shipments as were involved here was between 50 and 60 cents per case. We are unable to see why that fact should necessitate any reduction in the amount of recovery in such cases as this, however. There is no evidence in the record to the effect that there was any salvage in overhead expenses, by reason of the fact that this shipment was not handled. The testimony referred to was merely to the effect that, in the general conduct of its business, plaintiff computed that a general distribution of its overhead expenses would be such as involved a certain amount on the delivery of each case of goods handled. Presumably, the plaintiff's overhead expenses were fixed charges which remained the same, whether they handled a given shipment or not. At least there is nothing in the record to indicate the contrary.

The defendant has called our attention to a number of decisions in support of its contentions, which, in our opinion, have no application to the situation presented here. It will not be of assistance in determining the proper measure of damages, in such a case as this, to examine decisions involving shipments to consumers where the shipment could not be used and the consumer was obliged to go into the open market and buy the commodity desired.

We find no error in the record and, therefore, the judgment of the municipal court is affirmed.

*Judgment affirmed.*

O'CONNOR, P. J., and TAYLOR, J., concur.