St. Louis & San Francisco Railroad Company, *a Corporation,*
v. L. W. McGivney.

(Filed September 5, 1907.)

(91 Pac. 693.)

1.  CARRIERS—Injury to Freight—Connecting Carriers—Presumptions. Where goods shipped over several connecting lines are found to be injured when they reach their destination, there is no presumption that the injury occurred while the goods were in the hands of the first carrier.

2.  SAME—Initial Carrier—Duty of Delivery. If a common carrier accepts freight for a place beyond his usual route he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier carrying to the place of address, or connected with those who thus carry, and his liability ceases upon his making such delivery.

3.  SAME—Rights of Shipper—Information of Injury. If freight, addressed to a place beyond the usual route of the common carrier who first received it, is lost or injured, the shipper may demand satisfactory information from the first carrier that the injury or loss did not occur on its line, and if such carrier fails to furnish within a reasonable time, the proof in its possession or its control, tending to show that it was not responsible for the injury or loss, it will be held liable therefor, regardless of whether or not it was in fact responsible for such injury or loss.

4.  SAME. The right of a shipper, under section 511 of the Statutes of Oklahoma of 1893, to demand of a first carrier proof that loss of or injury to freight addressed to a point beyond its usual route, where it has been delivered to a connecting carrier, to the effect that the loss or injury did not occur on its line, does not prohibit a shipper in the first instance, without such demand, from bringing an action for damages for an alleged loss or injury.

5.  SAME. The purpose of the statute is to put the shipper in possession of the information which is in the possession or under

the control of the first carrier so that he may determine what carrier caused the injury, and obtain satisfaction therefor without being compelled to bring a multiplicity of actions.

6.    APPEAL.—Insufficient Evidence—Reversal and Dismissal.  Where a plaintiff fails to offer any evidence in support of an allegation of a petition which, if proven, would authorize a recovery, and the case is appealed to this court, such allegation, for the purposes of the appeal, will be deemed to have been waived; and while, in case of a reversal and remanding for a new trial, evidence might, on such second trial, be offered in support thereof, this court will not order a new trial for the purpose of affording such opportunity, as it is the duty of a litigant to offer all of his evidence at the first trial at which the law permits him to do so.

(Syllabus by the Court.)

*Error from the District Court of Grant County; before James K. Beauchamp, Trial Judge.*

Reversed and dismissed.

*Flynn & Ames,* and *R. A. Kleinschmidt,* for plaintiff in error.
*Mackey & Mackey,* for defendant in error.

Opinion of the court by

BURWELL, J.:  The appellee, L. W. McGivney, shipped a car of corn from Salt Fork, Oklahoma, to Henrietta, Texas, according to the bill of lading as follows:

"From Salt Fork, Oklahoma, to Sherman, Texas, over the St. Louis and San Francisco Railroad Company; from Sherman, Texas, to Fort Worth, Texas, over the Houston and Texas Central Railroad Company, and from Fort Worth, Texas, to Henrietta, Texas, over the Fort Worth and Denver City Railroad Company."

There was a delay in delivery, and, when the car finally reached Henrietta, over the Fort Worth & Denver R. R. Co., it was so damaged that the consignee refused to receive it.  The appellee made a claim to the Fort Worth & Denver company, which was by that company referred to the appellant company and investigated by it, and finally the appellee brought suit for the value of the corn.

There is absolutely no. evidence in the record that in the slightest degree indicates the corn was damaged while in transit over the appellant's road; and the fact that the car was received by a connecting line carries with it the presumption that it was in good condition when delivered by the appellant to such connecting road. The appellee has proceeded upon the theory that, because the appellant company received his corn for shipment and loss occurred, it is primarily liable to him without regard to negligence on the part of appellant. Such is a mistaken theory of the law. Where a common carrier receives freight for transportation to a point beyond its line, under a contract that it will deliver it to a connecting carrier and will not be liable for damages not occurring on its own line, and the goods are received by the connecting carrier without objection, the presumption of law is that the freight was in the same condition when delivered to the connecting carrier as it was when received by the initial carrier; and, if the freight is damaged when it reaches its destination, in the absence of proof, the presumption is that the damages occurred while the property was in the possession of the last carrier.

This identical question was decided by the supreme judicial court of Massachusetts, in the case of *Farmington Mercantile Co. v. Chicago B. & Q. R. Co.* (Mass.) 44 N. E. 131. Mr. Justice Holmes, the present member of the supreme court of the United States, participated in the opinion, although it was written by Mr. Justice Allen. The court said:

"When goods shipped over several connecting lines are found to be injured when they reach their destination, there is no presumption that the injury occurred while the goods were in the hands of the first carrier."

The supreme court of Alabama, in the case of *Louisville & N. R. Co. v. Jones* (Ala.) 14 So. 114, said:

"Where goods are delivered to a carrier for transportation to a point beyond its own line under a through bill of lading, which stipulates against liability for injury beyond its own line, and the goods are in a damaged condition when delivered by the con-

necting carrier to the consignee, the presumption is that the receiving carrier delivered them to the connecting carrier in good condition, and the presumption must be overcome before the consignor can recover for such damage from the receiving carrier."

In 6 Cyc. 490, §7, the law is declared as follows:

"Under the American rule that, in the absence of partnership relations or contract for through transportation, each of the carriers is alone liable for loss or damage occurring during his part of the transportation, the action may be brought directly against the carrier on whose line the loss or injury occurred. To render the first carrier liable, it must appear that he failed to deliver the goods to the connecting carrier, or delivered them in damaged condition. The second or subsequent carrier is not to be held liable in an action against him until it appears that he received the goods in sound condition and that loss or injury happened to them while in his possession. But on proof of delivery to the first carrier in good condition and receipt by the second carrier without objection, it will be presumed, in an action against the second carrier, that the goods were still in the condition in which they were received by the first carrier. Indeed the weight of authority seems to be in support of the general proposition that if the goods are delivered by the last carrier in damaged condition, the presumption arises without further evidence that the damage occurred while in the possession of the last carrier, and that the burden is upon him to prove that they were in the damaged condition when received by him, the double presumption being entertained that they were accepted in good condition by the first carrier, and that such good condition continued until their receipt by the last carrier, notwithstanding transportation over intermediate lines."

Under the law a common carrier is not bound to receive goods from a connecting carrier for transportation which are damaged, or if it receives them it is entitled to have the receipt given therefor, or the records of shipment show the real condition of the goods when it received them; and the presumption is that a second carrier, or any carrier, will not receipt a former carrier for goods as being in good condition when they are already damaged. It is because of the right of a subsequent carrier to have the record

speak the truth that the law, in the absence of a record or proof to the contrary, presumes that goods or freight was in good condition when received from a connecting carrier. The legislature of this territory has recognized the rule stated above, as will be seen from the following sections of the Statutes of Oklahoma of 1893:

"Sec. 510. If a common carrier accepts freights for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier, carrying to the place of address, or connected with those who thus carry, and his liability ceases upon his making such delivery."

"Sec. 511. If freight, addressed to a place beyond the usual route of the common carrier who first received it, is injured or lost, he must, within a reasonable time after demand, give satisfactory proof to the consignor that the loss or injury did not occur while it was in his charge, or he will be himself liable therefor."

From section 510 it will be seen that the liability of the first carrier ceases when it delivers freight to a competent connecting carrier, carrying freight in the direction of the destination thereof. And section 511 provides that where freight is received by a common carrier and its destination is beyond the usual route of the carrier first receiving it, and such freight is lost or injured, the first carrier must, within a reasonable time after demand, give satisfactory proof to the consignor that the loss or injury did not occur while it was in its charge, and if it fails to furnish such proof it will itself be liable therefor.

It is insisted that the word "demand" meant by the statute is a demand for payment for the loss. We do not think so. The statute, recognizing that the first carrier can easily furnish proof as to whether or not the loss occurred on its line, has provided that it must furnish the shipper with satisfactory proof within a reasonable time that it was not responsible for such loss. The shipper, under the statute, may go to the first carrier and request it to furnish proof that the injury did not occur on its line, so that it

may be able to locate the carrier responsible for the injury and sue it if necessary; but, if the first carrier fails to furnish the proof within a reasonable time, showing that the loss did not occur on its line, then it will be held liable therefor, regardless of whether or not it was, in fact, responsible for the injury to the freight. And under this section the shipper is entitled to full and complete information regarding the shipment, so far as known to the first carrier, which could be used by such carrier in defending an action for damages therefor; that is, to all of the proof in its possession or under its control at the time that would tend to show that the first carrier was not responsible for the loss. The penalty for failing to furnish such proof is absolute liability on its own part to pay the damage sustained. It must, however, be observed that this statute is not intended to prohibit one who has sustained loss by reason of injury to freight from suing the first carrier without such demand; but, when he does so, the burden is on the shipper to show by a preponderance of the evidence that the injury was the result of the negligence of such first carrier. The statute was enacted primarily for the benefit of the shipper, but, when he fails to avail himself of its conditions in the first instance, and sues the first carrier without such demand, he cannot then take advantage of its provisions after the first carrier has been put to the trouble and expense of defending an action against it. The statute is intended to require the first carrier to furnish to the shipper on demand that information which, in the absence of the statute, the shipper could only compel in an action against it, or some other connecting carrier.

The appellant has made other assignments of error, such as the barring of the cause of action by reason of the statute of limitation, and misdirecting the jury on questions of law, but it is not necessary to discuss them, as, under the record presented, the plaintiff must fail to recover. There are some allegations of the petition which, if proven, would make the appellant liable in damages; but, as there was absolutely no evidence offered as to them

so far as this appeal is concerned, they are deemed to have been waived. If the case were reversed and remanded by reason of error committed in the trial below on those issues which were litigated, the appellee would not be precluded from offering evidence on another trial, under any proper allegation of his petition. But when, on the trial of a case in the lower court, a party omits to offer evidence on an issue formed by the pleadings, and this court finds that he must fail under the evidence offered, and that he cannot recover on any of the issues tried, this court will not remand the case for a second trial under the theory that he might possibly make out a case or defense under allegations of his petition or answer which he did not support by evidence on the former trial. It is the duty of a party on a trial to litigate his whole case, and each and every part thereof, at the first opportunity, and, if he fails to do so, he cannot complain if the appellate court deems those issues not litigated as waived.

The judgment of the lower court is hereby reversed, at the cost of appellee, and the cause dismissed with prejudice.

Irwin, J., absent; all the other Justices concurring.