## ST. LOUIS-S. F. RY. CO. v. SLADE.

No. 19717. Opinion Filed Sept. 9, 1930.

Commissioners' Opinion, Division No. 2.

E. T. Miller, Cruce & Franklin, and W. T. Stratton, for plaintiff in error.

T. G. Chambers, Jr., and Ben C. Arnold, for defendant in error.

EAGLETON, C. E. P. Slade brought suit against the St. Louis-San Francisco Railway Company, alleging that he contracted with the defendant to transport certain hogs and cattle from Soper, Okla., to Council, Okla.; that it was the duty of the defendant to furnish the plaintiff with reasonably safe and suitable loading facilities and car for the purpose; that the loading facilities furnished were not reasonably safe for that purpose by reason whereof, in loading said car, certain of his hogs were injured and certain of his hogs were lost; that the car furnished was infected with cholera: that by reason thereof certain of his hogs became infected with cholera and died. Further, he alleged negligent handling of the shipment which injured and damaged certain of the hogs, and unnecessary delay in shipment which depreciated the value of the stock.

The defendant answered by a general denial, re-alleged the contract which was pleaded by the plaintiff, and asserted the provisions thereof in bar of and as a defense to the cause of action, and pleaded contributory negligence on the part of the plaintiff. The jury returned a verdict for the plaintiff, and judgment was entered thereon. The defendant brought this appeal.

The parties will be referred to as plaintiff and defendant as they appeared in the trial court.

The defendant first complains that its demurrer to plaintiff's evidence should have been sustained, and that the verdict is not sustained by the evidence. The plaintiff claimed as damages that, by reason of the negligence of the defendant in furnishing defective loading equipment, 23 hogs were lost in the loading of the car; that these hogs were of the reasonable value of $16 per head, or of the total value of $368; that by reason of the negligent handling of the shipment and the cholera 39 head of hogs died; that of these 30 head were of the reasonable value of $16 each, eight head were of the reasonable value of $50 each, and one was of the reasonable value of $75, making a total damage of $955. He alleged further damages making a total claim of $1,588. The court withdrew from the jury all of the claims for damage except those growing out of the defective loading equipment, the negligent handling of the shipment, and the cholera.

If there is any evidence reasonably tending to support a verdict of the jury, these assignments of error are not well taken.

It is the duty of the defendant, as a common carrier of live stock, to provide pens, chutes, and other appliances for loading and unloading stock at its shipping stations, to which it invites shippers, and which it requires shippers to use. It is the duty of such carrier to keep such pens and loading facilities in a reasonably safe condition for the purposes intended. S. L. & S. F. Ry. Co. v. Beets (Kan.) 89 Pac. 638. Evidence was introduced that the bull board (also called running board or gang plank) which is used as a movable floor connecting the loading platform with the floor of the car to be loaded, was of insufficient width to be reasonably safe for the purpose for which it was to be used; that it would not remain in place, but would move to the side; that it was not of sufficient strength, but would give under the weight of the stock going over it; and that the gates which opened out and extended into the car to be loaded—thus making a fence on each side of the runway from the loading platform into the car—were not of sufficient strength to remain straight under the pressure of crowding cattle or hogs, but would, when pressed against by crowding hogs or cattle, give and bend out and from the bull board, leaving a sizable crack or opening; that in the loading of the hogs here involved some hogs were seen to fall through the crack or opening so made. One person who was watching the loading told the loaders that the hogs were falling through the bull board "like flies." One hundred twenty-five hogs were placed in the car or driven from the loading pen up the chute and on to the bull board in an effort to place them in the car. Most of the loading was done at night. On the next day two hogs were recovered. Other hogs were reported as being loose in the vicinity the next day, but were not recovered. The car was sealed after it was loaded, the seals thereon were not broken until the car was unloaded at Council, Okla. Only 102 hogs were then in the car. This evidence reasonably tends to prove that, by reason of the defective loading equipment furnished by the defendant to load the car, this plaintiff had lost some of his hogs. It tends to prove that the loading appliances were not in reasonably safe condition to be used for that purpose. The jury by its verdict held the plaintiff was not guilty of contributory negligence.

Defendant contends that there was no showing sufficient to sustain a verdict as to the cholera infected condition of the car furnished. With this we cannot agree, for it is the duty of the carrier to furnish a car free from contagious diseases. There was affirmative proof that all the hogs so shipped were free from cholera or cholera contamination at the time they were shipped, that there was no cholera in the vicinity from which they came, nor had there been any there for a number of years prior to the date on which they were shipped; that after the shipment was made no cholera developed there, though some of the hogs lost in the loading remained in that vicinity. The proof further shows that there was no cholera in the vicinity of Council, where these hogs were unloaded, and no cholera had been there for a number of years prior to the time this shipment arrived and until the hogs of this shipment took and died of it: that there was no opportunity for these hogs to become so infected except through the car in which they were shipped. There was testimony that this car had contained other hogs and had not been cleaned before this shipment was made. The logical conclusion under this testimony was that the hogs which had

been previously shipped in that car were cholera infected, that the car had not been cleaned and disinfected subsequent to that date, and that the hogs of this shipment by coming in contact with the litter and manure from the former shipment took cholera, and the loss complained of occurred.

It is contended that there was no proof that these hogs died of cholera inasmuch as no licensed veterinary examined them while sick or held post mortem examination over any of them after they had died. With this we cannot agree. Men who had been in the hog business for many years, who had seen hogs sick with cholera, testified that these hogs were sick with and died of cholera. They described the symptoms of the sick hogs. These symptoms were those which veterinaries testified characterized cholera in hogs.

There was sufficient evidence to go to the jury on these questions, and sufficient evidence thereon reasonably to sustain the verdict.

Defendant relies on an Arkansas case, St. Louis-I. M. & S. Ry. Co. v. Henderson (Ark.) 21 S. W. 878. That case does not help defendant, for, as was there said, "there was evidence tending to show that the cattle were exposed to infection outside of the car," which was not shown in this case.

Plaintiff relies on Ill. Centr. Ry. Co. v. Harris (Ill.) 56 N. E. 316. Defendant endeavors to distinguish the facts of that case from the one at bar. We observe no substantial distinction between the two cases. We approve the law therein announced. The syllabus thereof well states the facts of that case and the rules applicable here in the following language:

"It is the duty of a railroad company to furnish shippers of cattle with cars free from contagious cattle diseases, and, if it fails to do so, it is liable for loss of cattle caused thereby.

"Cattle raised in a locality where a disease known as 'Texas fever' had not existed for many years were shipped from such locality, in cars furnished by defendant, to a point where such disease had not existed for many years. Shortly after their being unloaded, some of them exhibited symptoms of the disease, and subsequently died. The cars in which they were shipped had been used, shortly before they were loaded with plaintiff's cattle, in the transportation of other cattle. Held to warrant a jury in finding that the cars furnished by defendant were infected with the disease, and that the cattle contracted it therefrom, and hence it was not error to refuse to instruct for defendant in an action for such loss."

The defendant next complains that, over its objection, the plaintiff was permitted to prove that his attorney had made demand on it as the initial carrier of the shipment to furnish proof that the damage did not occur on its line if that were to be its contention, and that the letter of demand and response of the railroad were introduced in evidence. The letter of demand after listing the damages states:

"If, upon investigation of this matter, you desire to take the position that the damage herein complained of did not occur while the shipment was being transported by your company, you will make due proof of the same to the claimant."

It contends that the demand was not sufficient under the provisions of section 4937, C. O. S. 1921. With these contentions we do not agree. The initial carrier, under section 4936, C. O. S. 1921, is only liable for the damages occurring to a shipment while on its line. By section 4937, C. O. S. 1921, it is provided that the claimant may make demand on the railroad to give proof that the loss did not occur while the shipment was in its charge, and if it fails, after demand, to make such proof, it is liable for the loss regardless of whether or not it occurred on the initial or connecting lines. The statute is for the purpose of putting the shipper in possession of all the available information and to avoid the necessity of having a multiplicity of suits to determine the responsibility for damages. S. L. & S. F. Ry. Co. v. McGivney, 19 Okla 361, 91 Pac. 693. There is no presumption that, where stock is shipped over several connecting lines, as was done in this case, and are found to be damaged when they reach their destination, the injury occurred while the shipment was in the hands of the first carrier. St. Louis & S. F. Ry. Co. v. McGivney, 19 Okla. 361, 91 Pac. 693; Chicago, R I. & P. Ry. Co. v. Walker, 29 Okla. 856, 119 Pac. 993; S. L. & S. F. Ry. Co. v. Close, 42 Okla. 105, 140 Pac. 1176. But, on the failure of the initial carrier to make proof after demand that the shipment was in good condition at the time it was delivered to the connecting carrier, it became liable for the damages suffered whether they occurred on its line or on a connecting line. As the issues were made up, the plaintiff had the burden to prove either that the damages were suffered on the line of the initial carrier, or that the initial carrier had on demand failed to make proof that the injury did not occur on its line. The letters were competent to show the demand made. The demand made was sufficient under section 4937, C. O S. 1921.

Defendant next complains that it was not permitted to introduce in evidence a portion of a certified copy of the live-stock regulations issued by the Oklahoma State Board of Agriculture and the laws pertaining thereto. We see no error in this. There is no showing that the violation thereof was negligence and contributed to the injury complained of. This evidence would not tend to prove or disprove any issue in this case.

Defendant then complains that the court committed error in refusing to give the jury certain instructions requested by it.

Requested instruction No. 1 was an instructed verdict in favor of the defendant. This was not error as disclosed by the discussion of the sufficiency of the evidence to sustain the verdict of the jury above set forth.

Requested instruction No. 15 would have withdrawn the question of damage by cholera from the jury. Under the testimony introduced, such an instruction would have been erroneous.

Instruction No. 5 was to the effect that the initial carrier was only liable for damage occurring on its line. After the demand for proof that the damage did not occur on its line had been made, and the railroad failed to make proof that the damage did not so occur, such an instruction would have been erroneous.

Requested instructions Nos. 6, 7, and 11 were, in substance, given by the court.

Requested instruction No. 16 was based upon the rules and regulations of the Board of Agriculture. These rules and regulations were properly withheld from evidence, and there was no error in refusing this instruction.

Defendant finally complains that the court committed error in giving certain instructions.

Instruction No. 11 was to the effect that the defendant company would be liable for damages resulting from the negligence of the defendant as well as that of the connecting carriers. This was a correct instruction under the provisions of section 4937, C. O. S. 1921.

Instruction No. 12 was to the effect that the defendant should furnish the plaintiff a car free from infection with cholera which is a proper statement of the law.

The cause is therefore affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.